# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD SEARLES, | ) |
|                 Petitioner, | ) Civil Action No. 10 - 254 |
| v. | ) District Judge Nora Barry Fischer |
| | ) Magistrate Judge Lisa Pupo Lenihan |
| COMMONWEALTH OF PENNSYLVANIA, MICHAEL HARLOW, Superintendent of SCI-Mercer, THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, THE DISTRICT ATTORNEY FOR THE COUNTY OF ALLEGHENY, | ) |
|                 Respondents. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

### II. REPORT

Petitioner, Ronald Searles, a state prisoner incarcerated at the State Correctional Institution at Smithfield, located in Huntingdon, Pennsylvania, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition should be denied as without merit.

#### A. Relevant Factual and Procedural History

Petitioner was charged with six (6) informations in the Court of Common Pleas of Allegheny County, Criminal Division, as follows. At No. CC200400588, with one count each of Access Device Fraud, Receiving Stolen Property, and Criminal Conspiracy arising from an August 20, 2003

incident (Commw. Ex. 2); at No. CC 200402895,2 with one count of Burglary arising from a January 25, 2004 incident (Commw. Ex. 4); at No. CC 200407635 with one count of Burglary arising from a March 10, 2004 incident (Commw. Ex. 6); at No. CC 200408531 with one count of Burglary arising from an April 5, 2004 incident (Commw. Ex. 8); at No. CC 200408532 with one count of Receiving Stolen Property arising from an incident occurring between February 16 and February 18, 2004 (Commw. Ex. 10); and at No. CC 200408858 with one count of Burglary arising from an April 18, 2004 incident (Commw. Ex. 12). James Sheets, Esquire, represented the petitioner on all six cases. On December 13, 2004, Mr. Sheets sought and received a postponement due to his belief that Petitioner should be evaluated by the Behavior Clinic to determine his competency. It does not appear from the record that a competency evaluation was completed.

On March 14, 2005, Petitioner, represented by Mr. Sheets, appeared before the Honorable Lawrence J. O'Toole and entered guilty pleas to all of above listed Informations. During the plea colloquy, the Commonwealth set forth the following factual basis for Petitioner's guilty pleas as follows.

> At CC200400588 the Commonwealth would call Deliisa Coleman who would have testified on August 20, 2003, he [sic] awoke that morning to find out that someone had unlocked his [sic] kitchen window and stole items, his [sic] purse as well as other items in these and also his [sic] vehicle which was parked outside of his [sic] house. Shortly thereafter on - -
>
> The Court: There's no allegation they took a vehicle on the information you presented.
>
> Ms. Sharp: Well, no, Your Honor. We just know someone came in, took her purse and her vehicle. Later that day Western Union was called by a person named Carmen Wright-Johnson. Carmen Wright Johnson would testify that the defendant and his brother came over to his house and the defendant gave his the access device card belonging to Deliisa Coleman, asked his to call Western Union to

> wire the money for $400 and he offered to pay his $100 if he would use the card.
>
> At CC200402895 the Commonwealth would call Kenyon Roz who would have testified on January 25, 2004 - - actually the police had received a number of calls of a burglary in progress stating that someone was on the fire escape breaking in through a window. They got on the scene. They went through the same window, found drawers in the house opened everywhere. They could hear someone in there. …. The defendant fled out of the house.
>
> At CC200408532 Nicole Wintruba came home to his apartment on Morewood Avenue to find out that his apartment had been broken into and camera equipment was taken. Two days later the Camera Exchange found the equipment. The defendant was the one who pawned the equipment. He gave his ID. Also, the clerk from the Camera Exchange store picked the defendant out of a photo array as the person who pawned the equipment.
>
> At CC200407635 the Commonwealth would call Erin Opringer who would testify that on March 10, 2004, he came to his home on the North Side. The address was California Avenue. When he came home, he noticed the lights were on. He heard noise inside and he found the defendant inside of his home going through his belongings. The defendant fled from his home. Mr. Opringer later Id'd the defendant out of a photo array as the person he caught in his home. At CC200408531 the Commonwealth would call Jenna Kappelt who would have testified she came home on April 5, 2004. She lived at Henry Street. When she came home, she found the defendant exiting his apartment with a book-bag full of her belongings. She questioned him about this. He dropped the belongings and fled. She also picked him out of the photo array as the person who she caught.
>
> Lastly, Your Honor, at CC 200408858 the Commonwealth would call Eric DeRose who would testify that on April 18, 2004, he came home to his house on Aiken Street and found the defendant inside of his apartment. Mr. DeRose indicated he was missing cash out of his apartment and he also was able to pick the defendant out of a photo array.

Answer (ECF No. 14, pp. 8-9) (quoting Plea Transcript). Petitioner also completed a written guilty plea colloquy form (Commw. Ex. 13).

On May 20, 2005, Petitioner was sentenced to an aggregate term of imprisonment of from ten to twenty years. On May 27, 2005, Petitioner filed a *pro se* Motion for the Modification/Reduction of Sentence and Motion to Withdraw Guilty Plea and a *pro se* Notice of Appeal. By Order dated May 27, 2005 Judge O'Toole denied Petitioner's motion but appointed the Office of the Public Defender to represent him on appeal. Petitioner raised two claims on appeal.

1. Was Mr. Searles' guilty plea rendered unknowing and involuntary by a defective oral plea colloquy which failed to comport with the requirements of Pa. R. Crim. P. 590 that there be a sufficient inquiry by the trial court when accepting the plea to determine if the plea is voluntarily and understandingly tendered?

2. Did the trial court abuse its discretion when it imposed an unreasonable and excessive sentence by running both of Mr. Searles' sentences consecutively to one another and without giving requisite consideration to the specific statutory factors mandated by the sentencing code in fashioning the sentence which it did?

Judge O'TOOLE issued his Opinion denying Petitioner's points on appeal on September 28, 2005 (Commw. Ex. 16). On October 26, 2006, the Superior Court of Pennsylvania affirmed Petitioner's judgment of sentence (Commw Ex. 19). He did not file a petition for allowance of appeal.

On April 24, 2007, Petitioner filed a *pro se* petition pursuant to the Post-Conviction Relief Act (PCRA). New counsel filed an Amended PCRA Petition on February 13, 2008 raising a single claim: trial counsel provided ineffective assistance of counsel by failing to object to the defective plea colloquy conducted on March 14, 2005. On May 1, 2008, Judge O'Toole dismissed the petition. Petitioner filed a Notice of Appeal and on December 10, 2008, the Superior Court affirmed the trial court's order denying Petitioner's PCRA petition (Commw. Ex. 28). Petitioner filed a Petition for Allowance of Appeal, which was denied by the Supreme Court of Pennsylvania July 29, 2009.

On June 7, 2006, Petitioner filed his Petition for Writ of Habeas Corpus in this action wherein he raised the following claims.

1. Petitioner was denied his right to trial by jury.

2. Petitioner's Fifth Amendment rights were violated.

3. Petitioner was denied his due process rights under the Fifth and Fourteenth Amendments.

4. The record is not sufficient to disclose petitioner's competency to stand trial—state of mind before/on day of crime.

**B. Standards Governing Federal Habeas Corpus Review**

1. <u>Exhaustion Requirement</u>

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review. *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838 (1999). The petitioner has the burden of establishing that exhaustion has been satisfied. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d

591, 594 (3d Cir. 1995). Moreover, an application for a writ of habeas corpus may be denied on the merits, however, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State. 28 U.S.C. § 2254(b)(2).

2.      Standard of Review

In describing the role of federal habeas proceedings, the Supreme Court of the United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir.2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Few state court decisions will be "contrary to" Supreme Court precedent. "Clearly established Federal law" should be determined as of the date of the relevant state-court decision. Greene v. Palakovich, Civil No. 07-2163, 2010 WL 2134575 (3d Cir. May 28, 2010).

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular … case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Id. (quoting Williams, 529 U.S. at 407).

A recent decision of the Supreme Court illustrates the deference that the federal courts must accord to state court decisions. In Renico v. Lett, ___ U.S. ___, 130 S.Ct. 1855 (May 3, 2010), the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial. The

Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion. The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." § 2254(d)(1).

Lett, 130 S.Ct. at 1862. The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision - or, for that matter, the trial judge's declaration of a mistrial - was right or wrong. The latter question, in particular, is a close one. As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial. The Michigan Supreme Court declined to accept this confession of error, People v. Lett, 463 Mich. 939, 620 N.W.2d 855 (2000), and in any event - for the reasons we have explained - **whether the trial judge was right or wrong is not the pertinent question under AEDPA.**

*Id*. at 1865, n. 3 (emphasis added).

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000).

In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id*. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)). Where the state court fails to adjudicate or address the merits of a petitioner's claims, unless procedurally defaulted, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact. Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). Petitioner's claims will be reviewed in accordance with the standards set forth above.

### C. Petitioner's Claims

1. <u>Whether denied right to trial by jury</u>

Petitioner's first claim concerns the adequacy of his guilty plea. Specifically, he claims that he was deprived of his right to a fair trial and his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution. In support of this claim, he asserts that he was entitled to trial by jury on each separate charge, that he was prejudiced by the consolidation of his cases and denied his right to confront his accusers.

A defendant's plea of guilty amounts to a waiver of several of his constitutional rights.

> Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third, is the right to confront one's accusers. We cannot presume a waiver of these three important federal rights from a silent record.

Boykin v. Alabama, 395 U.S. 238, 243 (1969) (internal citations omitted). As with any waiver of a constitutional right, the Due Process Clause of the United States Constitution requires that a guilty plea be made "knowingly, voluntarily and intelligently." The constitutional standard is one that asks

whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. Id. at 243.

It has long been held that after a defendant pleads guilty, he may only attack the voluntary and intelligent nature of his guilty plea.

> We hold that after a criminal defendant pleads guilty, on the advice of counsel, he is not automatically entitled to federal collateral relief on proof that the indicting grand jury was unconstitutionally selected. The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity. A state prisoner must, of course, prove that some constitutional infirmity occurred in the proceedings. But the inquiry does not end at that point, as the Court of Appeals apparently thought. If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases,' McMann v. Richardson, [*supra*, 397 U.S. at 771. Counsel's failure to evaluate properly facts giving rise to a constitutional claim, or his failure properly to inform himself of facts that would have shown the existence of a constitutional claim, might in particular fact situations meet this standard of proof. Thus, while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief.
>
> We thus reaffirm the principle recognized in the Brady trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

Tollett v. Henderson, 411 U.S. 258, 266-267 (1973).

Whether a plea of guilty is voluntary for purposes of the federal constitution is a question of federal law. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). To determine whether a guilty plea

- 10 -

represents a voluntary and intelligent choice, a reviewing court must examine the totality of the circumstances surrounding the plea. Brady v. United States, 397 U.S. 742, 749 (1970). To ensure that a plea is both knowing and voluntary, it cannot have been induced through misrepresentation or coercion, Brady, 397 U.S. at 750, the defendant must have notice of the nature of the charge(s) against him, Henderson v. Morgan, 426 U.S. 637, 645 (1976), the defendant must have an understanding of the law in relation to the specific facts at issue, McCarthy v. United States, 394 U.S. 459, 466 (1969), and the defendant must appreciate the consequences of the plea, *i.e.*, he must understand the rights he is surrendering through his plea. Once entered, a defendant does not have an absolute right to withdraw a guilty plea. United States v. Isaac, 141 F.3d 477, 485 (3d Cir. 1998). Rather, a plea of guilty entered by one fully aware of the direct consequences must stand unless induced by threats, misrepresentation, or improper promises.

Petitioner raised this issue on direct appeal where Judge O'Toole held as follows.

> ... A review of the transcript of the guilty plea hearing demonstrates that the oral and written colloquies in this case were sufficient. After the Court read each of the eight charges to the Defendant, he indicated that he understood the charge and the possible sentence. The Commonwealth set forth a detailed factual basis for each of the charges, including eyewitness testimony positively identifying the Defendant. The written colloquy completely explained the Defendant's constitutional rights to him, including his right to a trial by jury, the presumption of innocence, and his right to confront witnesses. In addition, the Defendant stated that his mental illness, for which he was taking prescribed medication, did not effect his ability to understand the proceedings and the Defendant's attorney indicated that he believed the Defendant was entering the guilty plea knowingly and voluntarily. Accordingly, the court finds this allegation to be without merit.

ECF No. 14-4, p. 19.

Petitioner further raised this claim in terms of ineffective assistance of counsel in his PCRA proceeding where Judge O'Toole made the following findings.

> In this case, a review of the totality of the circumstances surrounding the Defendant's guilty plea convinces the Court that the Defendant was fully aware of the constitutional rights that he was waiving and that he was not induced in any fashion to plead guilty. Prior to appearing before the Court, the Defendant, with the assistance of counsel, completed a comprehensive ten-page Guilty Plea Explanation of Defendant's Rights form. he acknowledges in writing that he understood each of the rights explained in the form, including the presumption of innocence ans his right to trial by a jury of his peers. During the guilty plea hearing, the Court read each of the eight charges to the Defendant. The Defendant stated that he understood each charge and the possible sentence. The Commonwealth set forth a detailed factual basis for each of the charges, including eyewitness testimony positively identifying the Defendant. The Defendant then indicated that he read and understood the Guilty Plea Explanation of Defendant's Rights form, he stated that no threats or promises had been made to him, and that he was pleading guilty because he was guilty. Accordingly, the court finds the Defendant's claim that his trial counsel rendered ineffective assistance to be without merit.

ECF No. 14-7, p. 30. The Superior Court of Pennsylvania affirmed this holding. "Accordingly, we agree with the trial court that a review of the totality of circumstances indicates that appellant was fully aware of the constitutional rights he was waiving and that he was not induced in any fashion [*e.g.*, by ineffective counsel] to plead guilty." ECF No. 14-8, p. 8.

Here, Petitioner has not met his burden of showing that the state court's decisions are clearly contrary to federal law as determined by the Supreme Court of the United States. Nor has he shown that the state court's decisions are an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. In order for Petitioner to succeed on his claims it is not enough to convince a federal court that in its independent judgment the state court applied the law incorrectly, it must have applied the law in an "objectively unreasonable manner." Bell v. Cone, 535 U.S. at 698-699. Petitioner has not made such a showing and, therefore, is not entitled to habeas relief with respect to his first claim.

2. <u>Petitioner's Fifth Amendment rights were violated</u>

In his second claim, Petitioner asserts that his Fifth Amendment rights were violated by a compelled confession. As stated above, a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings. Thus, Petitioner may not raise his second claim following his guilty plea. *See* <u>McMann v. Richardson</u>, 397 U.S. 759 (1970) (holding that defendants, who with advice of counsel had entered pleas of guilty, were not entitled to hearing on habeas corpus petitions alleging that their confessions had been coerced and that the improperly procured confessions induced their guilty pleas where there was no further showing). Thus, his second claim should be denied.

3. <u>Petitioner was denied his due process rights under the Fifth and Fourteenth Amendments</u>

Here, Petitioner simply makes an unsupported statement that he was denied his rights under the Fifth and Fourteenth Amendment. Petitioner has the burden of setting forth sufficient facts to support each claim. Bald assertions and conclusory allegations do not afford a sufficient ground to provide habeas relief. <u>Zettlemoyer v. Fulcomer</u>, 923 F.2d 284, 298 & n. 12 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991); <u>Mayberry v. Petsock</u>, 821 F.2d 179, 185 (3d Cir.), *cert. denied*, 484 U.S. 946 (1987). Consequently, Petitioner has not shown that he is entitled to habeas relief with respect to this claim.

4. <u>Competency</u>

In his last claim Petitioner asserts that the record is not sufficient to disclose his competency to stand trial. Specifically, he claims that he was suffering from a serious mental illness, schizophrenia, bipolar disorder and other severe personality disorders and thus a competency hearing should have been held as requested by his counsel.

A criminal defendant has a due process right not be tried unless he is competent, Pate v. Robinson, 383 U.S. 375, 378 (1966), and he may not waive his right to counsel or plead guilty unless he does so "competently and intelligently," Johnson v. Zerbst, 304 U.S. 458, 468 (1938). The standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402 (1960) (per curiam ) (internal quotation marks omitted).[1] The standard of competency to enter a guilty plea is the same as the competency standard for standing trial. Godinez v. Moran, 509 U.S. 389 (1993).

Thus, in reviewing a guilty plea based on incompetency, the Court must undertake a two-part inquiry.

> A finding that a defendant is competent to stand trial, however, is not all that is necessary before he may be permitted to plead guilty or waive his right to counsel. In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary. In this sense there is a "heightened" standard for pleading guilty and for waiving the right to counsel, but it is not a heightened standard of competence.FN
>
>> FN. The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings. The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced.

---

1. *Accord* Drope v. Missouri, 420 U.S. 162, 171 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial").

Moran, 509 U.S. at 400-401, n.12 (1993)

When there is reason to doubt a defendant's competency, a trial court's failure to inquire into competency violates due process because it deprives the defendant of his right to a fair trial. Drope v. Missouri, 420 U.S. 162 (1975). In determining whether an examination into a defendant's competency is required, the Supreme Court has set forth the following guideposts.

> [E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

Drope, 420 U.S. at 180. As in any criminal case, however, a competency determination is necessary only when a court has reason to doubt the defendant's competence. Godinez, 509 U.S. at 402 n.13.

The state trial court accepted Petitioner's plea as knowing and voluntary but did not explicitly rule on his competence. In affirming the trial court, the Superior Court of Pennsylvania held as follows.

> Appellant's argument is belied by the record. At the time of his plea, Appellant was asked biographical questions, including: "Have you ever suffered from any mental disease?" to which Appellant responded, "No." Moments later, defense counsel interjected, "Your Honor, in regard to whether or not the defendant has ever suffered from any mental disease, he answered no. I think he wants to address the Court in regard to that." Next, the following exchange occurred:
>
> [Appellant:] I suffer from schizophrenia, but I can understand what you are saying.
>
> [THE COURT:] Do you take medication for this?

> [Appellant:] Yes.
>
> [THE COURT:] Does the medication affect your ability to understand what's going on around you?
>
> [Appellant:] No.
>
> [THE COURT:] You can understand what I've said to you and what your lawyer has said to you this morning?
>
> [Appellant:] Yes.
>
> Furthermore, in the written colloquy, Appellant was asked, *inter alia*, whether he "had any physical or mental illness that would affect [his] ability to understand these rights or affect the voluntary nature of [his] plea?" and whether he was "presently taking any medication which might affect his thinking or your free will?" Consistent with his oral statements to the trial court during his oral colloquy, Appellant answered both of these questions "no" on the written colloquy form.
>
> Contrary to Appellant's current assertions, the record reflects that, by his own admissions, his mental health status and his medications did not render his guilty plea unknowing or involuntary. We, therefore, hold that the trial court did not abuse its discretion by denying Appellant's motion to withdraw his guilty plea.

ECF No. 14-5, pp. 30-31.

The Court of Appeals for the Third Circuit has held that a state trial court's determination that a defendant's plea is voluntarily and knowingly entered constitutes an implied finding of fact that the defendant was competent.

> If a defendant does not have the "ability" to understand the proceedings, it is impossible that he "actually does" understand them. It follows, then, that a finding of competence is a prerequisite to a determination that a plea is knowing and voluntary. Thus, the state trial court's determination that [the defendant's] plea was knowing and voluntary, included an implied finding that he was competent.

Taylor v. Horn, 504 F.3d 416, 431 (3d Cir. 2007).

Accordingly, on federal habeas review, this Court must presume that Judge O'Toole's findings that Petitioner was competent were correct unless he has rebutted "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Taylor, 504 F.3d at 430-38. To this end, Petitioner has not submitted any evidence whatsoever to rebut this finding. Thus, he is not entitled to habeas relief as to his fourth claim. *Accord* Merrero v. Horn, Civil No. 00-2155, 2008 WL 3833382 (Aug. 15, 2008).

### D. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

Based on the discussion above, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

_____
Lisa Pupo Lenihan
U.S. Magistrate Judge

Dated: October 25, 2010

cc: Ronald Searles
GF-7136
SCI - Smithfield
1120 Pike Street
P.O. Box 999
Huntingdon, PA 16652